**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| STATE OF MISSOURI, ex rel. CHRIS KOSTER, Attorney General, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 09-cv-1641 |
| v. | ) ) | |
| PORTFOLIO RECOVERY ASSOCIATES, INC., and PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION
TO PLAINTIFF'S MOTION TO REMAND**

The present action seeks substantial payments on behalf of potentially thousands of Missouri citizens arising out of the debt collection activities of Defendants Portfolio Recovery Associates, Inc. ("PRA, Inc.") and Portfolio Recovery Associates, LLC ("PRA, LLC") (collectively "Defendants").  Plaintiff State of Missouri ex rel. Chris Koster ("Plaintiff") concedes, as it must, that the Complaint seeks "restitution to consumers who have suffered a monetary damage" (Pl's Mem. in Support of Remand ("Mem.") p. 1).  This is the type of representative action with large financial stakes for which Congress intended to extend federal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  In addition to federal jurisdiction under CAFA, the Complaint also gives rise to jurisdiction based on the federal Bankruptcy Code.  The Complaint alleges that Defendants attempt to collect on debts that have been discharged in bankruptcy.  Such alleged collection efforts would run afoul of the discharge injunctions entered by federal bankruptcy courts in individual debtors' bankruptcies, and Plaintiff's pursuit of claims based on purported violations of these discharge orders falls

within the purview of the Bankruptcy Code.  Because jurisdiction sounds both under CAFA and

the Bankruptcy Code, Plaintiff's motion to remand should be denied.

## BACKGROUND OF CASE

On August 18, 2009, Missouri Attorney General Chris Koster ("Attorney General")

commenced this action by filing a petition ("Complaint") against Defendants in the Circuit Court

of the City of St. Louis, Missouri, captioned *Missouri ex rel. Koster v. Portfolio Recovery Assoc.,*

*Inc., et al.*, No. 0922-CC08789, in his official capacity and on behalf of all citizens of the state of

Missouri who purportedly suffered an ascertainable loss (Complaint ¶¶ 1, 3; *Relief* ¶ 4).  PRA,

LLC specializes in the purchase and collection of consumer debt.  The Complaint alleges that

Defendants engage in numerous unfair and deceptive practices in connection with collection

activities (Complaint ¶¶ 8-9).  The Complaint seeks injunctive relief, civil penalties, restitution to

consumers, and costs of prosecution (Complaint ¶ 3, *Relief*, ¶¶ 2-7).

The Complaint fails to identify any particular consumers affected by the alleged conduct

and only generically describes categories of purported conduct said to be in violation of the

Missouri Merchandising Practices Act, § 407.020 RSMo. ("MMPA").  These categories include

(a) attempting to collect debts that were beyond the relevant statute of limitations, (b) filing

lawsuits against debtors without supporting documentation, and (c) collecting on debts

discharged in bankruptcy (Complaint ¶ 9).

Defendants served their Notice of Removal on October 2, 2009.  The Notice of Removal

invoked federal jurisdiction (1) under CAFA based on the Complaint's prayer for recoveries on

behalf of potentially thousands of debtors and (2) based on purported debt collection practices in

violation of federal bankruptcy discharge injunctions.  Plaintiff's motion to remand argues that

this action is not covered by CAFA and that bankruptcy law is not implicated by the allegations

of the Complaint.  Because Plaintiff's motion to remand is contrary to Congress' expressed intention that large representative actions and alleged violations of bankruptcy injunctions be adjudicated in federal court, Defendants file this opposition to remand and respectfully request that Plaintiff's motion be denied.[1]

**ARGUMENT**

**I.    CAFA Applies To This Representative Action In Which The Attorney General Seeks Monetary Recoveries For Potentially Thousands Of Debtors**

CAFA defines "class action" as "any civil action filed under rules 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. §1332(d)(1)(B).  The term "class action" should be construed broadly.  *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 424 (5th Cir. 2008).  A party cannot evade federal jurisdiction by failing to label its case as a class action in the pleadings, and the court must look beyond labels used in the complaint to determine the true nature of the claims.  *Caldwell*, 536 F.3d at 423 (case filed by Attorney General of Louisiana removable under CAFA because the real parties in interest are citizens of the State of Louisiana); *see also Associated Ins. Mgmt. Corp. v. Arkansas Gen. Agency, Inc.*, 149 F.3d 794, 796 (8th Cir. 1998) (looking beyond the pleadings is appropriate to determine the citizenship of the real parties to the controversy); *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 404 (8th Cir. 1977) (same).

In *Caldwell*, the Fifth Circuit affirmed the district court's finding that the real parties in interest for the treble damages sought were the citizen policyholders who allegedly were harmed

---

[1]    The Notice of Removal was accompanied by supporting evidence showing that the action satisfied CAFA's amount in controversy requirement, 28 U.S.C. § 1332(d)(2).  The Notice of Removal and Defendants' Response to the Court's Order of October 6, 2009, contained the requirements for "minimal diversity" under CAFA, 28 U.S.C. § 1332(d)(2).  Plaintiff's remand motion does not challenge these showings.

by Allstate's actions.  The court emphasized that removal was appropriate because the provision authorizing such damages was plainly written to allow the individuals harmed by violations of the statute to recover these damages.  *Id.* at 429.  Similarly, here, the Complaint seeks restitution under the MMPA, which authorizes payments "as may be necessary to restore to any person who has suffered any ascertainable loss."  § 407.100.4, RSMo.  Payment to individual consumers of any recovery awarded as restitution is not discretionary:  "It *shall* be the duty of the attorney general to distribute such funds to those persons injured."  *Id.* (emphasis supplied).  While Plaintiff would have this Court ignore the parties for whom relief is sought, CAFA and the cases cited above do not impose such blinders and require the Court to look at the real parties for whom relief is being sought.  The MMPA's mandatory restitution procedure is a state statute that creates a representative action under CAFA.[2/]

The outcome in *Caldwell* is well-supported by CAFA's legislative history and the plain meaning of "class action."  Congress stated its intent that under CAFA "the definition of 'class action' is to be interpreted liberally."  S. Rep. No. 109-14, at 35 (2005) *reprinted in* 2005 U.S.C.C.A.N. 3, 34.  Indeed, "class action" has long been recognized as a broad term meaning "representative suits" that are brought "on behalf of groups of persons similarly situated."  *Newberg on Class Actions* § 1:1 (2002).  CAFA employs a commonsensical definition of class action that is not dependant on labels provided by plaintiffs.  The detailed report of the Senate Judiciary Committee that drafted CAFA states:

> [The definition of class action] should not be confined solely to lawsuits that are labeled 'class actions' by the named plaintiff or the state rulemaking authority.

---

[2/]     Plaintiff asserts that the case "was brought by a single plaintiff, the State of Missouri" as though such fact makes any difference under CAFA (Pl's Mem. p. 3).  Under both Rule 23, Fed. R. Civ., P., and Rule 52.08, Mo. Sup. Ct. Rules, class actions may be brought by "*one* or more members of a class" and such cases are undeniably encompassed by CAFA.

> Generally speaking, *lawsuits that resemble a purported class action should be considered class actions for the purposes of applying these provisions*.

S. Rep. No. 109-14, at 35 (2005) (emphasis added).[3/] *Caldwell* thus properly determined that a representative suit resembling a class action falls within CAFA's purview.

Plaintiff attempts to distinguish *Caldwell* but its arguments merely point to differences that are factually wrong or without any legal significance, or both. First, Plaintiff asserts that *Caldwell* should not be followed because it also involved additional claims brought by private plaintiffs' counsel (Pl's Mem. p. 8). Plaintiff fails, however, to identify to any provision of CAFA that requires the presence of multiple counsel, or public and private lawyers, before an action is removable to federal court. And even if such fact were required, Plaintiff overlooks that it is present here. For the three-year period from August 18, 2006 to the date of removal, Portfolio Recovery filed approximately 4,225 lawsuits in Missouri to collect on debts (Notice of Removal p. 8). It is common for debtors in these suits to file counterclaims under the Federal Fair Debt Collection Act ("FDCPA") as well as independent lawsuits asserting causes of action under FDCPA and other legal theories. Plaintiff's present lawsuit piggybacks on these already-pending claims. Second, Plaintiff points to the request for treble damages under the antitrust statute in *Caldwell* versus the request for actual consumer losses in the instant complaint. The purported difference between the pleaded statutes and forms of relief is obvious but also meaningless under CAFA. While the MMPA does not impose treble damages, it does provide that amounts recovered in restitution must be paid to individual consumers, just as recoveries

---

[3/]    Though the Senate Judiciary Committee's report was issued ten days after CAFA's enactment, it may be given weight in interpreting the statute's ambiguous provisions. *See, e.g.*, *N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 535 (1982) ("Although postenactment developments cannot be accorded the weight of contemporary legislative history, we would be remiss if we ignored these authoritative expressions concerning the scope and purpose of [a statute] . . . .") (internal quotation omitted).

under the Louisiana antitrust statute are paid to consumers. *See Caldwell*, 536 F.3d at 429 ("The text of § 137 of the Monopolies Act, which authorizes the recovery of treble damages, plainly states that 'any person who is injured in his business or property' under the Monopolies Act "shall recover [treble] damages.'"); *compare* § 407.100.4, RSMo ("It shall be the duty of the attorney general to distribute such funds to those persons injured."). In both cases, the individual consumers have a real and substantial interest in recovery and the claims are being brought on their behalf in a representative capacity by the state. As such, both cases seek to adjudicate the claims of hundreds or thousands of individuals in a single action, bringing the cases under CAFA.

Plaintiff also asserts that Missouri is the real party in interest and therefore the action is not being brought in a representative capacity. Plaintiff misstates the relevant issue. All representative actions – by definition – involve more than one real party in interest. The relevant question, therefore, is not whether the state is *a* real party but whether it is the *sole* party. The allegations of the Complaint make clear it is not. For that reason, Plaintiff's lengthy string cite of non-CAFA cases is inapposite (Pl's Mem. pp. 6-8). In those cases, the court was being asked to ignore entirely the presence of the state as a party and to find that the sole interested parties were the citizens for whom recoveries were being sought (typically because the defendant hoped to establish complete diversity, which the state's presence as a party would destroy). In response, the courts observed that while portions of the relief being sought were for consumers, other portions were to vindicate the state's interest and therefore the state could not be ignored as a party. *See, e.g.*, *Missouri ex rel. Webster v. Best Buy Co., Inc.*, 715 F. Supp. 1455, 1457 (E.D. Mo. 1989) ("The recovery of damages for aggrieved consumers is but one aspect of the case."); *Missouri ex rel. Webster v. Freedom Fin. Corp.*, 727 F. Supp. 1313, 1317-18 (W.D. Mo. 1989)

(holding that state was not merely a nominal party and has a real interest "in spite of the fact that many of the interests being asserted by the State of Missouri in this suit are obviously actually those of people who have had business dealings in the past with the defendants").[4/]  That analysis is simply irrelevant under CAFA, which provides for the removal of actions if any portion of the case qualifies as a representative action.  *See Caldwell*, 536 F.3d at 430 (noting that in addition to

---

[4/]      None of Plaintiff's cited cases discusses CAFA or turns upon whether – as is relevant under CAFA – any portion of the complaint seeks relief in a representative capacity: *Illinois v. SDS West Corp.*, No. 09-3128, 2009 WL 2423308, at *4 (C.D. Ill. Jul. 30, 2009) (non-CAFA case in which only question is whether state is a real party in interest and distinguishing *Caldwell* in part because it is a CAFA case); *Illinois v. LiveDeal, Inc.*, No. 08-3287, 2009 WL 383434, at *2-3 (C.D. Ill. Feb. 12, 2009) (non-CAFA case rejecting argument that request for restitution is subordinate to state's other claims such that state has no substantial stake in the suit's outcome); *Hood ex rel. Mississippi v. Microsoft Corp*., 428 F.Supp.2d 537, 546-47 (S.D. Miss. 2006) (non-CAFA case rejecting argument that state was not real party in interest but noting that state is "wearing two hats by requesting relief for itself and for private parties"); *Wisconsin v. Abbott Lab., Amgen, Inc.*, 341 F.Supp.2d 1057, 1062-63 (W.D. Wis. 2004) (non-CAFA case rejecting argument that state has no substantial stake in case's outcome although it is "wearing two hats by requesting relief for itself and for private parties"); *Louisiana ex rel. Ieyoub v. Borden, Inc.*, No. 94-3640, 1995 WL 59548, at *1 (E.D.La. Feb. 10, 1995) (non-CAFA case in which court rejects argument that state is not real party in interest where state seeks statutory damages); *Maine v. Data Gen'l Corp.*, 697 F.Supp 23, 25 (D. Me. 1988) (non-CAFA case in which court rejects argument that state is not real party in interest where state seeks declaratory and injunction relief through state's human rights commission); *Maine v. First Jersey Securities, Inc.*, 655 F.Supp. 1370 (D. Me. 1987) (non-CAFA case finding that state is "a real party in interest, having an interest in the litigation separate and distinct from the interests of the individual class members whose benefit the action is in part brought"); *Alabama ex rel. Galanos v. Star Service & Petroleum Co., Inc.*, 616 F.Supp. 429, 430 (S.D. Ala. 1985) (non-CAFA case in which state seeks no damages for private citizens and only question presented is whether district attorney was acting in his official capacity); *Abrams v. Gen'l Motors Corp.*, 547 F.Supp. 703, 706 (S.D.N.Y. 1982) (non-CAFA case in which state's interest is "sufficient to preclude characterizing the state as a nominal party without a real interest"); *Kelley v. Carr*, 442 F.Supp 346, 356-57 (W.D.Mich. 1977) (non-CAFA case in which state seeks purely injunctive relief); *California v. Pac. Land Research Co.*, 569 P.2d 125, 129 (Cal. 1977) (non-CAFA case examining whether restitution is "only ancillary" to action); *Illinois v. Lann*, 587 N.E.2d 521, 526 (Ill. App. 1992) (non-CAFA case reaching question of consumer status "for discovery purposes only"); *Kansas ex rel. Stephan v. Brotherhood Bank & Trust Co.*, 649 P.2d 419, 423 (Kan. App. 1982) (non-CAFA case finding that lower court erred in holding that the state was not "*a* real party in interest" because "the availability of various remedies, one of which would recompense an aggrieved consumer, does not necessarily diminish the authority or interest of the state in prosecuting the action") (emphasis added).

recoveries for consumers, the state sought injunctive relief on behalf of the state and that if state limited relief to that remedy "its argument that it is the only real party in interest would be much more compelling").[5/]

Plaintiff's reliance on *Harvey v. Blockbuster, Inc.*, 384 F. Supp. 2d 749 (D.N.J. 2005), is misplaced. Unlike the MMPA, New Jersey's consumer protection statute does not provide for mandatory restitution to consumers. *See* N.J.S.A. 56:8-2 *et seq.* Thus, claims under the statute are not necessarily brought in a representative capacity and the *Harvey* court never addressed the issue presented here. Furthermore, the plaintiffs in *Harvey* sought only injunctive relief and civil penalties, and, unlike Plaintiff here, did not attempt to recover payments on behalf of unnamed citizens. *Harvey*, 384 F. Supp. 2d at 754.

*Harvey* also misuses legislative history under the controlling canons of statutory interpretation by relying on statements made in CAFA floor debates rather than the rejection of an amendment that would have excluded attorney general actions from removal under CAFA. As noted in the Notice of Removal (n. 2), Congress rejected a proposed amendment that would have explicitly prevented the removal of "[a]ny action brought by or on behalf of the Attorney General of any State." S. Amend. No. 5 to S. 5, 109th Cong. (1st Sess., 2005); *see also Caldwell*, 536 F.3d at 424 (citing 151 Cong. Rec. S1157, 1163-64 (daily ed. Feb. 9, 2005) (statement of Sen. Hatch). Long-standing canons of interpretation hold that the rejection of proposed amendments is strong evidence that Congress did not intend for the provision to be included in the bill. *See, e.g.*, 2A Sutherland *Statutes and Statutory Construction* § 48.18 (2007) ("Generally, the rejection of an amendment indicates that the legislature does not intend the bill

---

[5/]     For the same reason, Plaintiff's observation that the plaintiff is "the master of his own claim" is beside the point (Pl's Mem. p. 3). Plaintiff has chosen to seek relief not merely for the state but also for potentially thousands of individuals and therefore elected to make the action subject to CAFA.

to include the provisions embodied in the rejected amendment.").[6] Rather than relying on the amendment, however, *Harvey* improperly leans on individual comments during floor debates, which should be afforded little weight. The Supreme Court has recognized that "floor debates reflect at best the understanding of individual Congressmen" (*Zuber v. Allen*, 396 U.S. 168, 186 (1969)) and therefore has "eschewed reliance on the passing comments of one Member and casual statements from the floor debates" (*Garcia v. United States*, 469 U.S. 70, 76 (1984) (internal citations omitted)). *Harvey* turns the canons upside down and serves as no authority for remand. If this Court requires assistance from CAFA's legislative history to determine whether the MMPA's mandatory restitution provision creates a representative action, the relevant history is the rejection of an amendment to exclude attorney general actions.[7]

Because the Complaint seeks relief on behalf of individual debtors and under the MMPA such relief *must* be paid over to the individuals, this is a representative action under CAFA and is subject to federal jurisdiction.

---

[6]    *See also Bell*, 456 U.S. at 537 (relying on Congress's rejection of amendments to Title IX as evidence of its scope); *United States v. Pfitsch*, 256 U.S. 547, 550-51 (1921) (reviewing rejected amendment and determining that the "legislative history . . . establishes that the difference of the jurisdictional provision in section 10 from those of sections 12, 16, and 25 was the result, not of inadvertence, but of deliberate action in the face of opposition"); *Tyler v. United States*, 929 F.2d 451, 456 n.8 (9th Cir. 1991) (noting "the very fact of deletion implies a legislative intent different from that inhering in the original proposal").

[7]    Plaintiff's citation to *In re U-Haul International, Inc.*, No. 08-7122, 2009 WL 902414 (D.C. Cir. Apr. 6, 2009), is a mystery (Pl's Mem. p. 5). The citation is to an unpublished, per curiam denial of a petition for leave to appeal that contains no substantive discussion. This non-opinion carries no weight. Even worse, Plaintiff inexplicably cites to the *dissenting* opinion.

## II.    The Complaint's Allegation That Defendants Violate Bankruptcy Injunctions By Attempting To Collect Discharged Debts Supplies a Second Basis for Federal Jurisdiction

Federal courts have jurisdiction over civil proceedings arising under, arising in, or related to cases under the Bankruptcy Code, U.S. Title 11.  28 U.S.C. § 1334(a) and (b).  This jurisdiction is extremely broad.  *In re Farmland Indust., Inc.*, 567 F.3d 1010, 1019 (8th Cir. 2009).  Actions encompassed by § 1334 may be removed under the corresponding removal statute, 28 U.S.C. § 1452.

The Complaint alleges conduct that falls squarely within the Bankruptcy Code when it claims that Defendants violated the MMPA by "[p]urchasing debts discharged in bankruptcy, with the intention of attempting collections" and "[i]nducing consumers to pay on accounts that are already paid or discharged in bankruptcy" (Compl. ¶ 9(a) and (d)).  The gist of the allegation is that a consumer filed a bankruptcy case, that the bankruptcy court issued an order discharging debts and enjoining collection of those debts, and that Defendants violated the discharge injunction by attempting to collect the debt.[8/]  Because the enforcement of a discharge is a quintessential bankruptcy function, Plaintiff's claim triggers federal bankruptcy jurisdiction.

"Arising under" jurisdiction exists where one party "invoke[s] a substantive right created by federal bankruptcy law."  *In re Farmland Indust., Inc.*, 567 F.3d at 1018 (quoting *Browning v. Levy*, 283 F.3d 761, 773 (6th Cir. 2002)).  State-law claims based upon alleged violations of Bankruptcy Code provisions arise under the Bankruptcy Code and are subject to federal jurisdiction.  *In re Miles*, 430 F.3d 1083, 1089-93 (9th Cir. 2005) (state-law claims related to filing of involuntary bankruptcy "arise under" the Bankruptcy Code and are properly removed to

---

[8/]    A discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt." 11 U.S.C. § 524(a)(2).

federal court); *see also Pereira v. First North American Nat'l Bank*, 223 B.R. 28, 31-32 (N.D. Miss. 2002) (class action claims for accounting and unjust enrichment based on alleged violation of automatic stay and discharge under Bankruptcy Code § 524 are preempted); *Diamante v. Solomon & Solomon, P.C.*, 2001 WL 1217226 at *2 (N.D.N.Y Sept. 18, 2001) (collecting cases holding that common law and state consumer protection claims based on violations of the Bankruptcy Code are preempted).  In the bankruptcy context, a federal court plainly has "jurisdiction to interpret and enforce its own prior orders."  *Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195, 2205 (2009).  That jurisdiction is "core" bankruptcy jurisdiction, *i.e.*, more than merely "related to" jurisdiction under § 1334(b).  *In re Williams*, 256 B.R. 885, 892 (B.A.P. 8th Cir. 2001); *In re Balsam Corp.*, 185 B.R. 54, 57 (E.D. Mo. 1995).

     Plaintiff cites no contrary cases and attempts instead to distinguish the cases cited in Defendants' Notice of Removal.  According to Plaintiff, *Miles* does not apply because the plaintiff "was angry at the creditors' action in [its] bankruptcy" and brought a claim "in a different jurisdiction."  *Miles*, however, makes clear that preemption turns not on whether "anger" arose as a result of action in the bankruptcy court, but rather on the critical need to protect federal bankruptcy jurisdiction and to ensure that actions in other courts do not impinge on that jurisdiction.  As the Ninth Circuit explained, the "complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code" create "a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike" and must be "jealously guard[ed] . . . from even slight incursions and disruptions" from state-law claims.  *Miles*, 430 F.3d at 1089 (quoting *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 914 (9th Cir. 1996)) (internal quotations omitted).  This principle applies with even greater force in the present case, where Plaintiff seeks to preclude any federal court from

ruling on claims arising out of alleged violations of bankruptcy discharges. Here, the pleaded

claim is not only inextricably tied to bankruptcy law – it would not exist but for a bankruptcy

court order.

In addition to "arising under" jurisdiction, the Complaint is subject to removal under

§ 1334(b) because it presents claims "related to" bankruptcy cases. As this Court, sitting by

designation with the Eighth Circuit, wrote "[f]or subject matter jurisdiction to exist in a 'related

to' action, there must be some nexus between the civil proceeding and the Title 11 case" such

that the proceeding has a "conceivable effect" on the bankruptcy estate:

> [T]he test for determining whether a civil proceeding is related to bankruptcy is
> whether the outcome of that proceeding could conceivably have any effect on the
> estate being administered in the bankruptcy . . . .
>
> An action is related to bankruptcy if the outcome could alter the debtor's rights,
> liabilities, options or freedom of action . . . and which in any way impacts upon
> the handling and administration of the bankruptcy estate. *Specialty Mills, Inc. v.
> Citizens State Bank*, 51 F.3d 770, 774 (8th Cir. 1995).

The "conceivable effect" test is not hard to meet and does not require certainty, or even

likelihood, of an effect on the bankruptcy estate. *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d

261, 264 (3d Cir. 1991).

The present allegations readily meet this test. The Complaint seeks recovery for

individual debtors (Compl. Prayer). Under the MMPA, such recoveries cannot be retained by

the Attorney General and must be paid to the affected individuals. The cash payments resulting

from any successful recoveries, therefore, would have a conceivable, if not certain, effect on the

bankruptcy estates of those individuals. While those effects may vary depending upon whether

the underlying estate remains open at the time of recovery, or upon the chapter of the Bankruptcy

Code under which the debtor filed, the Complaint makes no distinction among various debtors

and the circumstances of their bankruptcy cases. The payments may be required to be paid into a

bankruptcy estate, closed estates may need to be reopened, or the payments may go to the

debtors personally.  Under the conceivable effect test, this Court does not need to resolve these

bankruptcy issues, and it is sufficient that the recoveries may affect the bankruptcy estates.

Plaintiff asserts that there is no way this case could affect the bankruptcy estate of any debtor but

ignores its own prayer for payments – not merely to the state – but on behalf of individual

debtors.

**Conclusion**

For the reasons stated above and in Defendants' Notice of Removal, Plaintiff's motion to

remand should be denied.

Respectfully submitted,

BRYAN CAVE LLP

By: /s/ Jeffrey S. Russell

John Michael Clear, # 2828
Jeffrey S. Russell, # 4232
James R. Wyrsch, # 530429
Angela L. Harris, # 5216523
One Metropolitan Square – Suite 3600
211 North Broadway
St. Louis, MO 63102
Tel. (314) 259-2000
Fax: (314) 259-2020 (fax)

*Attorneys for Portfolio Recovery Associates,*
*Inc. and Portfolio Recovery Associates, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 30, 2009, the foregoing was served electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ Jeffrey S. Russell