IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STATE OF MISSOURI, ex rel. CHRIS KOSTER, Attorney General, | ) ) |
| Plaintiff, | ) |
| v. | ) Case No. 09-cv-1641CAS |
| | ) |
| PORTFOLIO RECOVERY ASSOCIATES, INC., and PORTFOLIO RECOVERY ASSOCIATES, LLC, | ) ) ) |
| Defendants. | ) |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION
AND
RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

COMES NOW Plaintiff State of Missouri, by and through Assistant Attorney General Debra K. Lumpkins, and for its Suggestion in Opposition and Response to Defendant's Motion to Dismiss, states to the Court as follows:

**Introduction**

On August 18, 2009, Plaintiff filed its Petition for Preliminary and Permanent Injunction, Restitution, Civil Penalties, And Other Relief (hereinafter referred to as "Petition") in the Circuit Court of St. Louis City, Missouri. On October 2, 2009, Defendants filed their Notice of Removal. On October 20, 2009, Plaintiff filed its Motion to Remand. That Motion has been fully briefed by both sides and awaits the Court's decision. On November 9, 2009, Defendants filed their Motion to Dismiss.

Plaintiff alleges Defendants have violated the Merchandising Practices Act ("MPA") by certain specific unfair, misleading and deceptive practices. In its Motion to Dismiss, Defendants argue that Plaintiff has failed to plead with the specificity required by Rules 8 and 9 of the Federal Rules of Civil Procedure, that the MPA does not apply to Defendants' actions, and that

1

Defendant Portfolio Recovery Associates, Inc., does not collect debts in Missouri and therefore this court lacks jurisdiction over it.

Plaintiff respectfully opposes Defendants' Motion to Dismiss for the reasons listed below.

## Discussion

### I.     MPA applies to debt collection actions brought by the Attorney General

The Merchandising Practices Act[1] ("MPA") was enacted in 1967 to enable the Attorney General of Missouri to "preserve fundamental honesty, fair play and right dealings in public transactions." Zmuda v. Chesterfield Valley Power Sports, Inc., 267 S.W.3d 712, 716 (Mo.App. E.D., 2008). Defendants claim the Attorney General cannot protect the citizens of Missouri from deceptive, misleading or unfair practices by debt collectors. There is no such limitation in the law. The law is intentionally broad to prevent "evasion by overly meticulous definitions." Clement v. St. Charles Nissan, Inc. 103 S.W.3d 898, 899 (Mo.App., 2003).

Section 407.020.1 describes the scope of the MPA. To be understood, it must be read with the meanings of the words, some of which have special definitions in the statute, and others are defined by common usage. Below is most of the first sentence of § 407.020 with the definitions of terms at issue:

> "The act, use or employment by any person[2] of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact **in connection with**[3] **= associated with or caused by or related to**
>
> the **sale**[4] **= any sale, lease, offer for sale or lease, or attempt to sell or lease merchandise for cash or on credit**

---

[1] R.S. Mo §§ 407.010 et seq.
[2] Person is defined at 407.010(5).
[3] "In connection with" is not defined by statute. This definition is from the Merriam-Webster dictionary on-line: http://www.merriam-webster.com/dictionary/connects
[4] "Sale" is defined at 407.010(6)

or advertisement[5] in trade or commerce[6] = **the advertising, offering for sale, sale, or distribution, or any combination thereof, of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated, including any trade or commerce directly or indirectly affecting the people of this state**…

And the last sentence of 407.020.1:

Any act, use or employment declared unlawful by this subsection violates this subsection whether committed **before, during or after the sale**, advertisement or solicitation. *Emphasis added.*

The statute is made expansive particularly by the use of the words "in connection." If the deceptive acts are "in connection" with the sale or advertisement of merchandise, the acts constitute a violation of the MPA. "In connection" is a very loose standard. It could be described almost as a "but for" test. The collection of an account is in connection with the sale of goods or services, or the loan of money. If money had not been loaned or goods sold on credit, and allegedly unpaid, there would be no debt collector. Clearly, the collection of debts is connected to the original sale of goods or services.

Defendants also ignore the portion of the statue declaring unlawful acts occurring **after** the sale are also subject to the MPA. If an original creditor used unfair and deceptive acts to <u>collect</u> their own account, it would clearly be 'connected' to the original sale of goods or services, and would be covered by the MPA's "after the sale" provision. When Defendants purchase the accounts they collect, they step into the shoes of the creditor. The MPA cannot be read to make Defendants less liable for their own acts of deception, misrepresentation, and the like, than the creditor who used the same tactics. If Defendants expect to have the rights of the original creditor, they should also have the responsibilities of fair and honest dealing.

---

[5] "Advertisement" is defined at 407.010(1)
[6] "Trade" or "Commerce" is defined at 407.010(7)

Also ignored by the Defendants is the portion of statute that makes it clear just how broad "in connection" really is. The terms "trade" and commerce" are defined to include "**any** commerce **directly or indirectly affecting** the people of this state." § 407.010(7). *Emphasis added*. In sum, "in connection," "before, during or after," and "directly or indirectly affecting" cannot be read to allow debt collectors to harass and otherwise mistreat the people of Missouri. The Merchandising Practices Act clearly applies to the collection of debt.

Defendants cite Lavender v. Wolpoff & Abramson, 2007 WL 2507752 (W.D. Mo.) as a basis that the MPA does not apply to actions brought by the attorney general for the unfair and deceptive acts committed by debt collectors. Such reliance is misplaced for several reasons:

(1) The Missouri Supreme Court held in Gibbons v. Nuckolls, 216 S.W.3d 667 (Mo., 2007) that privity is not a requirement for application of the MPA. In the Lavender case, which was decided about 5 months after the Gibbons case, the Western District of Missouri held that since the consumers had not paid or hired the debt collector, the MPA did not apply. That is essentially a privity argument. The holding by the Supreme Court in Gibbons was that privity was not required for MPA actions brought by consumers, and that the wholesaler, as well as the retail dealer, were liable for the injury to the consumer. The consumer had not paid the wholesaler anything, and in fact did not even know who the wholesaler was at the time of purchase (feds have follow state law);

(2) Consumers do pay the debt collector when they make any payment on the account. The debt collector charges fees and interest, and in regard to these Defendants, also obtain judgments in their own name; and

(3) Lavender was a private action, not one brought by the Attorney General. Courts, as well as the MPA itself, have always permitted the Attorney General greater latitude in defense of

4

the public.  In the first place, the MPA was written solely for public actions brought by the Attorney General.  It was not amended to allow a private right of action until several years later.  The Attorney General has been permitted to seek civil penalties since the act was passed, but private actors could not obtain punitive damages, a similar penalty, until the act was amended some time later.  Private individuals can only bring an action regarding merchandise that was bought primarily for household, personal, or family use[7], although the Attorney General has no such limitation.  Even now, bad actors who merely <u>attempt</u> to deceive or advertise falsely can only be brought to justice by the Office of the Attorney General.  Private actions can only be brought if there is an ascertainable loss. <u>Chochorowski v. Home Depot USA, Inc.</u>, 2009 WL 3048894 (Mo.App. E.D.)

## II. *Plaintiff's Complaint Satisfies the Notice Pleading Requirements of FRCP 8(a)(2) and 9(b)*

The Merchandising Practices Act ("MPA") serves as a <u>supplement </u>to the common-law definition of fraud. <u>Zmuda v. Chesterfield Valley Power Sports, Inc</u>., 267 S.W.3d 712, 716 (Mo.App., 2008, citing <u>Clement v. St. Charles Nissan, Inc.,</u>  103S.W.3d 898, 899 (Mo. App., 2003).  Pursuant to section 407.020.1, the "act, use or employment by an person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce ... is declared to be an unlawful practice." This provision is intentionally broad to prevent "evasion by overly meticulous definitions." <u>Clement,</u> at 900. We determine whether fair dealing has been violated based upon the particular facts and circumstances of each case. <u>Id</u>.   It is not necessary to prove the elements of common law fraud in order to establish a violation of the MPA. <u>Id</u>.

---

[7] 407.025.1

The U.S. Supreme Court cases cited by Defendants, Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), do not change the standards for notice pleading under the Federal Rules of Civil Procedure. Indeed, they emphasis that the petition herein includes the "more than an unadorned, the-defendant-unlawfully-harmed me accusation" described in Iqbal, at 1949.

This Court recently stated that "[u]nder the heightened pleading requirements of Rule 9(b), an allegation of fraud or mistake must "'include such matters as the time, place, contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given thereby.'" Blake v. Career Educ. Corp., 2009 WL 140742, 2 "More simplistically, "the complaint must identify the 'who, what, where, when, and how' of the alleged fraud."[8] Plaintiff believes that its complaint more than adequately satisfies the "who, what, where, when, and how" requirement set forth by this Court.

Specifically, Plaintiff alleges in the complaint (ECF # 6, pages 3 and 4) that defendants' unlawful acts include:

> a) Purchasing debts discharged in bankruptcy, with the intention of attempting collections;
> b) Attempting to collect debts from the wrong alleged debtor, and refusing to stop collection efforts when the consumer denies owing on the account;
> c) Attempting to collect debts that are well beyond the relevant statute of limitations;
> d) Inducing consumers to pay on accounts that are already paid or discharged in bankruptcy;
> e) Threatening actions that cannot be taken, such as garnishment of social security;
> f) Refusing to identify themselves or the account being collected and continuing collection efforts;
> g) Refusing to provide proof of the debt when requested to do so by consumers, and continuing collection efforts;
> h) Repeatedly calling consumers after notification that the alleged debtor is not at that number or residing at that location;

---

[8] *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.,* 441 F.3d 552, 556 (8th Cir. 2006) (quoting *U.S. ex rel. Costner v. URS Consultants, Inc.,* 317 F.3d 883, 888 (8th Cir. 2003)).

> i) Repeatedly calling consumers' employers after being advised to cease the practice;
> j) Submitting false credit reports, and refusals to remove the reports after notice;
> k) Assessing interest and fees that are not owed;
> l) Filing lawsuits against consumers without documentation to support the case; and
> m) Filing false or misleading affidavits in Missouri courts."

The minutia of "who, what, when, where, and how" varies depending upon the situation. This is not a private action brought by a specific consumer victim or group of victims. This action is brought by the State of Missouri. Plaintiff has information that the acts complained of were done by Defendants, but does not know the specific identity of the persons involved. That information is in the possession of the Defendants and will be obtained from them during discovery. It is unreasonable for Defendants to demand the specific names of the consumer victims, their addresses, and the exact dates the unlawful acts occurred. Defendants state they own and collect approximately 500,000 accounts belonging to Missouri citizens (ECF # 1, page 7, paragraph 19. "Who, what, when, where and how" was provided to the degree that it can be done reasonably in a pleading brought by the state. The Attorney General's office and the Federal Trade Commission continue to receive complaints from Missouri consumers. The specificity apparently demanded by Defendants would never be complete. Plaintiff does not believe that the lack of certain particular facts makes the complaint defective under Rule 9(b).

Plaintiff has met the requirements of pleading its MPA claims, and therefore plaintiff's claims should not be dismissed.

### III.    *The Acts Alleged in Plaintiff's Complaint are Unfair Practices Under the MPA*

As stated previously, the definition of "unfair practices" as used in RSMO § 407.020 includes an action that "(A) [e]ither – (1) [o]ffends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission,

or its interpretive decisions; or (2) [i]s unethical, oppressive or unscrupulous; and (B) [p]resents a risk of, or causes, substantial injury to consumers." 15 CSR 60-8.020. In its complaint, Plaintiff alleged that Defendants engaged in unfair and deceptive acts and practices and included those acts that it believes Defendants engaged in that meet the standard set forth in 15 CSR 60-8.020(1). Although the actions alleged in the complaint are not specifically listed in RSMO § 407.020, these are certainly the types of actions the Missouri General Assembly had in mind when it granted the Missouri Attorney General the authority to make rules necessary to administer and enforce the MPA. Clearly, in crafting the definition of the terms "unfair practices" to include "unethical, oppressive or unscrupulous" actions, the Missouri Attorney General was leaving room to pursue a wide range of actions, including those listed in Plaintiff's complaint. As previously stated, Missouri courts have stated that the purpose of the MPA "…is to 'preserve fundamental honesty, fair play and right dealings in public transactions.'" Zmuda, 899.

Whether Defendants' actions were violations of the MPA will be a factual determination. Did Defendants tell consumers that the accounts were "stale" and no legal action could be taken? If not, surely that is omitting a material fact in violation of the MPA. If Defendants are filing lawsuits against consumers without real evidence that the debt is actually owed by the consumer they sued, that would be a false pretense and unlawful. It is probably also misrepresentation, and unfair practice, and the concealment of material facts. The complaint alleges a number of actions, which, if proved, amount to clear violations of the purpose of the MPA.

Defendants repeatedly contend that their actions do not violate the Fair Debt Collection Practices Act ("FDCPA"). This is not an FDCPA case, and it matters not whether the acts complained of are prohibited by that act. As stated earlier, the MPA is a broader statute than the

8

FDCPA. This is evident from the definition of "unfair practices" in 15 CSR 60-8.020(1) which includes, but is not limited to, violations of statutes enforced by the FTC, including the FDCPA. The purpose of bringing this action is not to enforce the FDCPA – even though some of the actions alleged in the complaint are clear violations of this statute – but rather, to protect Missouri consumers; authority which was granted to the Missouri Attorney General by the Missouri General Assembly. Therefore, even if none of the actions complained of are violations of the FDCPA, there is no questions that, if true, all of the allegations made by Plaintiff in the complaint constitute "unfair practices" as defined by the Missouri Attorney General. Plaintiff is not attempting to clothe an FDCPA action in the guise of the MPA. Plaintiff is attempting to enforce Missouri law.

For this reason, Plaintiff believes it is entitled to bring an action that alleges violations of the MPA that might not be in violation of the FDCPA.

### IV.    This Court Does Have Personal Jurisdiction Over PRA

Defendant Portfolio Recovery Associates, Inc.'s ("PRA, Inc.") last argument in support of its Motion to Dismiss is that under Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 649 (8th Cir. 2003) quoting Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc., 519 F.2d 634, 637 (8th Cir. 1975). "'[A] corporation is not doing business in a state merely by the presence of its wholly owned subsidiary.'" Id. The Eighth Circuit added that "personal jurisdiction can be based on the activities of the nonresident corporation's in-state subsidiary, but only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego." Id. These Defendants meet those standards since

PRA, Inc., and PRA, LLC, are so intertwined it is impossible to tell where one leaves off and the other begins.

On the PRA, Inc. website[9] it states that "Portfolio Recovery Associates, Inc. "PRA" and its subsidiaries purchase and manage portfolios …" *See exhibit A, attached*. On the same web page is the heading "Visit Our Subsidiaries" which includes links to IGS, Revenue Discovery Systems, and MuniServices, all wholly-owned subsidiaries of PRA, Inc. Id. Each of those wholly owned subsidiaries has a separate web page. Missing is a link for Portfolio Recovery Associates, LLC. PRA, LLC uses the same web site as PRA, Inc.

PRA, Inc. claims to be the purchaser of debt, but PRA, LLC files suits alleging to be the assignee of the original creditor, not of PRA, Inc. *See exhibit B, attached, sample affidavit from case filed by PRA, LLC in Clay County Circuit Court.* PRA, Inc., purchases bankruptcy discharged debt,[10] yet PRA, LLC, files suit, upon information and belief including some previously discharged in bankruptcy.

Defendants allege that the Attorney General has 'lumped together' PRA, Inc., and PRA, LLC. Defendants' Motion to Dismiss, ECF # 20, pg. 10. Perhaps that is because Inc. and LLC lump themselves together in their collection attempts. Consumers report getting phone calls from Portfolio Recovery Associates (no "LLC" or "Inc") claiming that Portfolio has purchased the debt and is attempting to collect it. No distinction is made by Defendants to consumers between the purchase of the account and the collection of same. *Affidavit of Investigator Michelle Hankinson, attached as exhibit C, attached.*

Defendants share an address, 120 Corporate Blvd., Norfolk, Virginia. Defendants share a registered agent, and were served on the same day, at the same address, to the same registered

---

[9] http://www.portfoliorecovery.com/
[10] http://www.portfoliorecovery.com/pdf/PRA%20BK%20Brochure.pdf

agent.  Clearly, PRA, Inc. is merely an alter ego of PRA, LLC., and therefore, because this Court can exercise personal jurisdiction over PRA, LLC for collecting debts from Missouri citizens,[11] it can also exercise personal jurisdiction over PRA, Inc. under the Epps case.  For these reasons, Plaintiff believes that this Court is able to exercise personal jurisdiction over PRA, Inc.

## Conclusion

Plaintiff respectfully opposes Defendants' motion to dismiss for the reasons stated above, and is of the belief that its complaint satisfies the pleading requirements of Rules 8(a)(2) and 9(b) of the Federal Rules of Civil Procedure, that the MPA does apply to debt collection practices, that the practices listed in Plaintiff's complaint do qualify as "unfair practices" under the MPA, and that this Court does, in fact, have personal jurisdiction over both Defendants.

Respectfully submitted,

CHRIS KOSTER
Attorney General

s/ Debra K. Lumpkins
Debra K. Lumpkins
Assistant Attorney General
P.O. Box 861
St. Louis, MO 63188
Phone: (314) 340-6816
Fax: (314) 340-7957

ATTORNEYS FOR PLAINTIFF

## Certificate of Service

I hereby certify that on 24th day of November, 2009, the foregoing was served electronically with the Clerk of the Court using the CM/ECF system upon all counsel of record.

s/ Debra K. Lumpkins
Debra K. Lumpkins

---

[11] *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 707 (8th Cir. 2003).